No 25-6042

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

INNOVATIVE HEALTH, LLC,
*Plaintiff-Appellee,*
*v.*

BIOSENSE WEBSTER, INC.,
*Defendant-Appellant.*

———————————

On Appeal from the United States District Court
for the Central District of California
No. 8:19-cv-1984-JVS
Hon. James V. Selna

———————————

**BRIEF FOR CONGRESSMAN NEAL DUNN AS *AMICUS CURIAE* IN
SUPPORT OF APPELLEE AND AFFIRMANCE**

———————————

Stephen M. Duvernay
Jamie G. McWilliam
BENBROOK LAW GROUP, PC
701 University Avenue, Suite 106
Sacramento, CA  95825
(916) 447-4900
steve@benbrooklawgroup.com

Joel Thayer
THAYER PLLC
1255 Union Street NE
7th Floor
Washington, DC 20002
(760) 668-0934
jthayer@thayer.tech

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(c)(1) of the Federal Rules of Appellate Procedure, counsel for *amicus curiae* hereby state that amicus is an individual and therefore has no parent corporations and has issued no stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT.......................................................... i

TABLE OF AUTHORITIES............................................................................... iii

INTEREST OF *AMICUS CURIAE* .................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT...................................... 2

ARGUMENT ................................................................................................... 3

I.      The Right to Repair Is a Fundamental Matter of National Concern .............. 3

II.     Congress Has Repeatedly Taken Action to Preserve the Right to Repair .... 6

III.    This Case Will Have Massive Implications for the Right to Repair and Our Economy Generally..................................................................... 10

CONCLUSION ............................................................................................... 12

CERTIFICATE OF COMPLIANCE ................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Eastman Kodak Co. v. Image Technical Service, Inc.*,
    504 U.S. 451 (1992) ...............................................................................5, 6

*Heyer v. Duplicator Mfg. Co.*,
    263 U.S. 100 (1929) .................................................................................5

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984) .....................................................................................5

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007) .................................................................................6

*Wilson v. Simpson*,
    50 U.S. 109 (1850) ................................................................................4, 5

**Statutes**

21 U.S.C. § 360(o) .......................................................................................9

Cal. Civ. Code § 1793.03 .............................................................................6

Ind. Code Ann. § 26-2-6-2 ...........................................................................6

R.I. Gen. Laws § 6A-2-329(5) ......................................................................6

Tex. Bus. & Com. Code § 121.051 ...............................................................7

**Other Authorities**

H.R. Rep. No. 107-728 (2002) ......................................................................9

*Letter from Thomas Jefferson to Samuel Kercheval* (July 12, 1816), Teaching
    American History, https://perma.cc/5VP4-N5XU ...................................4

Press Release, *Congressman Dunn Puts Vehicle Owners in the Driver's Seat,
    Giving them Control of Crucial Vehicle Repair Data* (February 25, 2025),
    https://perma.cc/8UMH-J39Q ..................................................................7

Press Release, *Gluesenkamp Perez Introduces Legislation to Give Americans the
    Right to Repair Their Own Electronics* (February 9, 2026),
    https://perma.cc/3NA2-PCZ5 ..................................................................8

Press Release, *Gluesenkamp Perez Introduces Legislation to Guarantee Farmers
    the Right to Repair Their Own Equipment* (November 4, 2025),
    https://perma.cc/9R33-UCR3.....................................................................8

iv

Press Release, *Hawley, Luján Introduce Bipartisan Legislation to Expand Car Repair Options, Increase Transparency for Vehicle Owners* (April 11, 2025, https://perma.cc/BQ7C-GHJS ................................................................7

Press Release, *Luján, Morelle, Gluesenkamp Perez Continue Fight for Consumers' Right to Repair* (February 6, 2026), https://perma.cc/PZ6C-R28C .......................8

Press Release, *Welch, Gluesenkamp Perez Lead Bicameral Legislation to Provide Farmers with the Right to Repair* (October 30, 2025), https://perma.cc/45XR-4PZV ................................................................................................................8

## INTEREST OF *AMICUS CURIAE*[1]

Amicus Representative Neal Dunn (R-FL) is a Member of the United States Congress who has introduced and sponsored federal legislation protecting the right to repair across multiple sectors of the American economy. Congressman Dunn is the lead House sponsor of the REPAIR Act (H.R. 1566, 119th Cong.), which was advanced by the House Energy & Commerce Subcommittee on Innovation, Data, and Commerce in February 2026.

Congressman Dunn's perspective can assist this Court as it considers the consequences of the outcome of this case. To be able to deliver the best care to the most people at the lowest price, providers should not be denied the right to repair or reprocess their medical devices. Whether a dominant platform manufacturer may foreclose independent competition in aftermarket services—without antitrust consequence—directly determines whether the competitive ecosystem that Congress and the States have worked to protect through right-to-repair legislation and the Medical Device User Fee and Modernization Act of 2002 ("MDUFMA") can survive.

---

[1] No party's counsel authored this brief in whole or part, and no person (including any party or party's counsel) contributed money to fund its preparation or submission. Plaintiff-Appellee Innovative Health, LLC has consented to the brief's filing. Defendant-Appellant Biosense Webster, Inc. has not consented.

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case is about the right to repair—and what happens when a manufacturer uses its control over a proprietary platform to destroy it. The right to repair equipment you own, and to choose who services it, is a foundational principle of free and competitive markets. Antitrust law has long served as its backstop. When original equipment manufacturers leverage market power over a platform to foreclose independent competitors from the aftermarkets for service, repair, parts, or replacement components, the Sherman Act intervenes—not as a novel application, but as one of the statute's oldest and most settled functions.

Congress has acted – and continues to act – on protecting the rights of owners to use their property freely. For example, a bipartisan coalition of Republican and Democratic legislators—including Congressman Dunn—has introduced the REPAIR Act (H.R. 1566/S. 1379), which requires vehicle manufacturers to share diagnostic data and repair tools with independent shops and vehicle owners. Federal legislators have introduced similar legislation for agricultural equipment (the FARM Act, H.R. 5857) and digital electronic equipment (Fair Repair Act, H.R. 7404/S. 3821).

For purposes of this case, Congress has already spoken. The Medical Device User Fee and Modernization Act of 2002 brought third-party reprocessors of single-use devices into the FDA's regulatory ambit, subjecting them to the same premarket

notification, quality system, labeling, and adverse-event reporting requirements as original equipment manufacturers (OEMs). The legislation intermediates the inherent conflict between OEMs and reprocessors by creating an independent process at the FDA for validating the reuse of single-use medical devices so that OEMs are not in the business of interfering with competition from their natural rivals.

Amicus opposes any corporate policy that thwarts the intent of MDUFMA to bring healthy competition between the manufacturers of single-use medical devices and the third parties that receive FDA clearance to reprocess those devices. The hospitals of this country serve Congress's constituents. They depend on competition from manufacturers and independent service organizations (ISOs) to ensure a resilient supply chain that delivers the best quality at the lowest price. When manufacturers interfere with that process—preventing doctors from doing what is best for their patients—it is the public that loses most of all.

## ARGUMENT

### I. The Right to Repair Is a Fundamental Matter of National Concern.

When a hospital, farmer, or consumer buys equipment, that purchase does not automatically grant the original manufacturer perpetual control over the downstream markets for service, maintenance, repair, and replacement parts. Rather, consumers expect that when they buy something, they own it—and have a right to obtain

aftermarket goods and services from independent competitors or even to provide those goods and services themselves. The ability to obtain aftermarket goods and services at competitive prices from independent competitors is, at its core, the right to repair.

This "you buy it, you own it" principle is deeply rooted in the American political tradition. As Thomas Jefferson wrote, "[t]he true foundation of republican government is the equal right of every citizen in his person and property and in their management." *Letter from Thomas Jefferson to Samuel Kercheval* (July 12, 1816), Teaching American History, https://perma.cc/5VP4-N5XU. That principle also is instinctual to our general experience as consumers. Every day, hardworking Americans use their hard-earned dollars to buy products and services they need. After buying something, they expect it to be theirs—not to be subject to continued rent-seeking by the original manufacturer after the fact.

The law has long recognized a right to repair. The Supreme Court addressed the issue nearly two centuries ago in *Wilson v. Simpson*, where it noted "the right of a purchaser to repair" with "any material,—wood, metal, or glass,— so as to produce an original result, or to aid the efficiency of one already known … ." 50 U.S. 109, 125 (1850). The *Wilson* Court emphasized that the right to repair was necessary to ensure that a buyer gets the full benefit of their purchase:

> It is the use of the whole of that which a purchaser buys, when the patentee sells to him a machine; and when he repairs the damages which

4

> may be done to it, it is no more than the exercise of that right of care which every one may use to give duration to that which he owns, or has a right to use as a whole.

*Id.* at 123.

The Court reiterated the point when it was confronted with a similar issue nearly eighty years later in *Heyer v. Duplicator Mfg. Co.*, 263 U.S. 100 (1929). Justice Holmes, writing for the Court, explained: "[I]t has been the established law that a patentee had not 'a more equitable right to force the disuse of the machine entirely, on account of the inoperativeness of a part of it, than the purchaser has to repair, who has, in the whole of it, a right of use.'" *Id.* 102 (quoting *Wilson*, 50 U.S. at 123).

Along those same lines, antitrust law has developed to protect consumers' rights to free and uncoerced choice, including in aftermarkets. For example, the federal antitrust laws have long prohibited tying, which occurs when a seller "exploit[s] its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 13 (1984). And in *Eastman Kodak Co. v. Image Technical Service, Inc.*, 504 U.S. 451 (1992), the Supreme Court made clear that the antitrust laws apply with the same force to aftermarkets: even where the primary market—for cars, for example—is competitive, buying the car can "lock" customers into the aftermarkets for compatible parts and service, giving the OEM leverage to raise prices and drive

5

out aftermarket competition. *Id.* at 472. Thus, "in some instances one brand of a product can constitute a separate market" for antitrust purposes. *Id.* at 482. "[P]roviding consumers with a free choice about" economic actions in aftermarkets is therefore "a basic antitrust objective." *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 927 (2007) (Breyer, J., dissenting).

Since the Founding of this Nation, our law has sought to implement a principle deeply entrenched in the American ethos: to fully respect property rights and fair competition, we must have a strong right to repair. In diverse fields from patent law to antitrust, this principle has guided legal reasoning for centuries. And it remains central to our free market today.

## II. Congress Has Repeatedly Taken Action to Preserve the Right to Repair.

Congress is seeking to do more—not less—to protect the rights of the public to use their property, as seen in efforts extending to cars, tractors, and even consumer electronics.[2] Congress is currently considering several similar bipartisan measures.

---

[2] At the state level, numerous jurisdictions have made the right to repair explicit. For example, Rhode Island requires manufacturers to "have adequate service information and replacement parts available to warranty stations and independent service facilities, to effect repair and restore to operating condition." R.I. Gen. Laws § 6A-2-329(5). Indiana requires manufacturers to "make available to service representatives or independent service facilities adequate service information and replacement parts" for at least seven years after the date the product model or type was manufactured. Ind. Code Ann. § 26-2-6-2. California's Song-Beverly Act requires manufacturers who make an express warranty when selling an electronic or appliance product to make available to service and repair facilities sufficient service literature and repair parts. Cal. Civ. Code § 1793.03. Starting September 1, 2026,

The REPAIR Act addresses motor vehicle repair by restricting automakers from blocking independent shops' access to repair data, tools, and software. H.R. 1566/S. 1379. The Fair Repair Act aims to make diagnostic repair information and parts available for consumer electronics. H.R. 7404. The FARM Act targets agricultural equipment to allow farmers to repair tractors and machinery. H.R. 5857.

As statements from legislators show, these bills share a common goal: keeping prices low and empowering consumers to protect their property from monopoly overreach. When discussing the REPAIR Act:

- Senator Josh Hawley stated "[b]ig corporations have a history of gatekeeping basic information that belongs to car owners, effectively forcing consumers to pay a fixed price whenever their car is in the shop." Press Release, *Hawley, Luján Introduce Bipartisan Legislation to Expand Car Repair Options, Increase Transparency for Vehicle Owners* (April 11, 2025, https://perma.cc/BQ7C-GHJS.

- Senator Ben Ray Lujan similarly emphasized that "[v]ehicle owners deserve to have options when it comes to safe, dependable, and affordable auto repairs." *Id.*

- Congressman Neal Dunn writes, "American consumers deserve full control over their vehicle repair and maintenance data to ensure they can find the best service for their vehicle at a reasonable price." Press Release, *Congressman Dunn Puts Vehicle Owners in the Driver's Seat, Giving them Control of Crucial Vehicle Repair Data* (February 25, 2025), https://perma.cc/8UMH-J39Q.

Regarding the Fair Repair Act:

---

Texas will require manufacturers of consumer electronics worth more than $50 to provide replacement parts, tools, and repair documents to consumers and independent repair providers. Tex. Bus. & Com. Code § 121.051.

- Senator Ben Ray Lujan said that the legislation "will make it easier and more affordable for Americans to get repairs from third-party shops." Press Release, *Luján, Morelle, Gluesenkamp Perez Continue Fight for Consumers' Right to Repair* (February 6, 2026), https://perma.cc/PZ6C-R28C.

- Congressman Joe Morelle explained that the act "makes repairs more affordable and puts power back in the hands of consumers, not big corporations." *Id.*

- Congresswoman Marie Gluesenkamp Perez stated that the Fair Repair Act is aimed at "affirm[ing] that people have the right to repair their own property or take it to a more convenient shop." Press Release, *Gluesenkamp Perez Introduces Legislation to Give Americans the Right to Repair Their Own Electronics* (February 9, 2026), https://perma.cc/3NA2-PCZ5.

And concerning the FARM Act:

- Senator Peter Welch stated that it "will help protect farmers from rip-offs and ensure they have the right to fix their own equipment." Press Release, *Welch, Gluesenkamp Perez Lead Bicameral Legislation to Provide Farmers with the Right to Repair* (October 30, 2025), https://perma.cc/45XR-4PZV.

- Senator Elizabeth Warren called the bill "a commonsense solution: it fights back against the manufacturers' greed and will save our farmers billions every year in repair costs." *Id.*

- Congresswoman Marie Gluesenkamp Perez said the "legislation affirms our right to feed ourselves, to be independent, and to be stewards of our tools—not hapless consumers." Press Release, *Gluesenkamp Perez Introduces Legislation to Guarantee Farmers the Right to Repair Their Own Equipment* (November 4, 2025), https://perma.cc/9R33-UCR3.

Congress sought to protect similar interests by endorsing reprocessing through the Medical Device User Fee and Modernization Act of 2002 (MDUFMA). Reprocessing refers to the cleaning, testing, sterilization, and restoration of single-

8

use medical devices, like catheters, so they can be safely reused—a practice hospitals utilize wherever possible to conserve resources. MDUFMA subjects third-party reprocessors to the same pre-market notification requirements, labeling obligations, and adverse-event reporting as original equipment manufacturers, and requires reprocessors to demonstrate that their cleaning, sterilization, and performance testing produce a device that is substantially equivalent to the original. *See* 21 U.S.C. § 360(o). The House Committee Report accompanying MDUFMA stated that the Act's purpose was "to ensure that reprocessed medical devices are as safe and effective as original devices." H.R. Rep. No. 107-728, at 21 (2002).

In other words, to expand the significant benefits of reprocessing across the country, Congress chose to elevate independent medical device reprocessors, giving them the right to compete on the same footing and on the same terms as original device manufacturers after proving the worthiness of their reprocessed products to the FDA. The right to repair is an area of pressing national concern. This is just as true in the case of medical equipment as it is with automobiles or farm equipment. Whenever hospitals are unable to use their equipment or must use it on terms dictated by the OEM, we are concerned. OEMs should not interfere with the professional judgments of physicians. Neither surgeon nor patient should have to wait for access to a machine. No surgeon should have to opt for a catheter with a larger diameter— and thus more invasive—because the OEM is preventing them from using a smaller

9

size of the same brand of catheter. Nor should they be forced to rely on a device that is more expensive simply to pad someone else's bottom line when the same device is available at a lower cost.

## III. This Case Will Have Massive Implications for the Right to Repair and Our Economy Generally.

The legal issues in this case will have a great impact on the ability of OEMs like Biosense to engage in tying practices. These anti-competitive measures limit the market for companies to exercise their right to repair through reprocessing. And if OEMs are permitted to push reprocessed components out of the market, hospitals will lose access to vital resources and face higher costs that could threaten their continued operations or which they will be forced to pass along to patients.

MDUFMA was intended to create a level playing field for competition between original equipment manufacturers and reprocessors. Monopoly control is no better than state control of the means of production. The results are the same: inefficiency leading to higher prices and less service.

When reprocessors are allowed to compete on even footing with OEMs, it brings substantial benefits to patients and care providers. First, reprocessing lowers costs. Hospitals often operate under significant financial constraints, and the ability to use reprocessed devices can yield meaningful savings that are ultimately passed on to patients in the form of lower healthcare costs. Second, reprocessing enhances supply chain resiliency. When one manufacturer experiences a shortage of a

10

particular device, hospitals with access to reprocessed alternatives can continue to provide uninterrupted patient care rather than delaying lifesaving procedures. Third, reprocessing reduces medical waste by extending the useful life of devices that would otherwise be discarded after a single use.

When OEMs block competition in medical devices, hospitals pay higher prices for those devices. The hospital must wait days or weeks if the manufacturer approved parts or technician is not available. Without competition from ISOs, a surgeon may have to postpone procedures waiting for a service or replacement device that is only available from the OEM. The antitrust laws were enacted more than a century ago to protect against those harms to competition.

Higher prices reverberate within a hospital. Without the ability to reuse cardiac mapping catheters at a competitive price, a hospital may spend an additional $100,000 annually to use a single cardiac mapping machine. The hospital has less funds for acquiring new technology or adding new staff. As a result, the hospital may have to reduce access to care or pass additional costs onto patients. In some instances, community hospitals are forced to close.

Furthermore, higher healthcare costs resound throughout our economy. Rural hospitals are the hubs of economic activity in local communities. They are already closing at a rapid pace. The federal and state governments foot the bill for higher reimbursement rates for cardiac mapping procedures for our elderly and indigent

11

populations. That money must be diverted from other government programs or financed by a growing public debt. Employers carry the higher insurance premiums—and face higher costs than their overseas competitors. Our global competitiveness is therefore put in jeopardy.

In sum, the United States has always been a free market where you can bargain for the highest quality service at the lowest possible price. The right to repair is an essential part of that bargain. When a monopolist can put their thumb on the scale of that bargain and take away our rights to use our property, the rest of us lose. The stakes do not get any higher than healthcare.

## CONCLUSION

For all the foregoing reasons, Amicus asks this Court to affirm the jury verdict. To ensure that care provides can deliver the best care to the most people at the lowest price they should not be denied the right to repair or reprocess their medical devices.

Dated: May 29, 2026

Respectfully submitted,

Benbrook Law Group, PC
Stephen M. Duvernay
Jamie G. McWilliam

Thayer PLLC
Joel Thayer

s/ Stephen M. Duvernay
Attorneys for *Amicus Curiae*

12

## CERTIFICATE OF COMPLIANCE

I certify that this amicus brief complies with the type-volume limitation in Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i) because it contains 2,845 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Fed. R. of App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated:  May 29, 2026                        Respectfully submitted,

<u>s/ Stephen M. Duvernay</u>
Attorneys for *Amicus Curiae*